FENDALL G. WINSTON and others *vs.* ALBERT JOHNSON.

January 23, 1890.

**Deed—Reservation of Strip for Alley.**—One M., the owner of a tract of land in the city of Minneapolis, sold a portion thereof to C. In the deed of conveyance the land sold was described by metes and bounds as 33 by 90 feet in size, "excepting and reserving therefrom a strip of land 10 feet wide and 33 feet long across the rear or inner end of said 90 feet for an alley." *Held*, that the title to the fee to that part of the tract excepted and reserved as above stated, vested in the grantee, C.

**Same—Reservation of Way in Gross.**—It is competent for a grantor in a deed to create a right of way over the land conveyed, in his own favor, either appurtenant or *in gross*, by a reservation inserted in his deed. And it may be done though, in terms, it be an exception.

**Same—Grant in Gross—Presumption.**—A grant *in gross* is never presumed when it can fairly be construed as appurtenant to some other estate.

**Same—Way Appurtenant or In Gross—Construction.**—When there is in the deed no declaration of the intention of the parties in regard to the nature of the way, it will be determined by its relation to other estates of the grantor, or its want of such relation. Resort may also be had in such a case to other circumstances surrounding the transaction, for the purpose of ascertaining the intent and the effect to be given the instrument.

**Same—Easements, when deemed Appurtenant.**—Where it appears by a fair interpretation of the words of a grant, in connection with surrounding circumstances, that it was the intention of the parties to create or reserve a right in the nature of an easement in the property granted, for the benefit of other land of the grantor and originally forming, with the land conveyed, one parcel, such right will be deemed appurtenant to the land of the grantor and binding on that conveyed. The right and burden thus created will pass to and be binding on all subsequent grantees of the respective parcels of land.

**Same — Duty to Pay Taxes on Strip reserved for Alley.**— It was the duty of the owner of the servient estate to pay the taxes upon the tract of land excepted and reserved for an alley, in the manner stated in the first paragraph of the syllabus.

Appeals by defendant from an order of the district court for Hennepin county sustaining a demurrer to portions of his answer, and from an order refusing a new trial, both orders having been made by *Rea*, J.

*Hart & Brewer*, for appellant.

*Koon & Semple*, for respondents.

COLLINS, J. In 1870 one Mattison owned a tract of land in the city of Minneapolis, 90 feet front upon Fourth street, extending south 157 feet, beside First avenue, to a public alley which ran east and west parallel with Fourth street. December 6th of that year Mattison sold and conveyed to one Cleator a piece off from the north end 'of said tract, 33 feet wide on the avenue and 90 feet in length along the street, according to the description, by metes and bounds, in the deed, "excepting and reserving therefrom a strip of land 10 feet wide and 33 feet long across the rear or inner end of said 90 feet for an alley." It will be seen that this excepted and reserved strip extended, at right angles, from the street to the tract of land retained by Mattison. Two days later Mattison sold and conveyed this entire tract, with all its hereditaments and appurtenances, to Town and Grimshaw. It was described as 90 feet wide and 124 feet long. No mention was made of the alley, reserved and excepted in the Cleator deed, in this conveyance, nor in any of the conveyances which followed, save as hereinafter stated. Town and Grimshaw subdivided their purchase into five separate parcels fronting upon the avenue. The first sold, that lying beside the Cleator lot, was described as 80 feet deep only; but in all subsequent conveyances the parcels were each described, by metes and bounds, as 90 feet deep, with a reservation and exception in each deed, substantially the same as that in the deed to Cleator. The latter erected a building abutting upon the alleged alley, on his lot, soon after buying the same. He sold to defendant in the year 1882, the description in the conveyance being identical with that found in the deed from his grantor, including the reservation and exception. From the time of the first actual occupancy of any part of the original tract (by Cleator) down to within a few days prior to the commencement of this action, all of the owners and occupants of the entire premises, for the time being, including

the defendant and his predecessor, Cleator, had used the strip in dispute for alley purposes in connection with the excepted and reserved strips upon the south, through to the public alley. When Mattison sold to Town and Grimshaw he informed them that there was an alley-way across Cleator's lot, and they in turn so stated to the persons to whom they sold the different parcels. And in each case this statement was an inducement to purchase. A short time before this action was brought, the defendant, by means of various obstructions, rendered the alleged alley impassable where plaintiffs claim it crossed his lot, asserting title in fee thereto by reason of certain tax proceedings, judgments, sales of the land in question, and certificates of conveyance issued therefor by the proper authorities. The object of this action is to compel defendant to open the alleged alley, as well as to forever restrain and enjoin him from further interference with it, to the detriment and hindrance of plaintiffs, who are the present owners of the inside lots.

The defendant contends that the words of the deed from Mattison to Cleator, hereinbefore quoted, must be held an express exception of the strip 10 feet wide, instead of a reservation; that therefore Mattison retained and held the title in fee, and simply agreed with his grantee that the same should not be put to any other use than for an alley, thus ensuring to Cleator light, air, and such other benefits as would naturally accrue to him as the owner of the tract in front and abutting thereon. And that as land is never appurtenant to land, Town and Grimshaw acquired no easement therein through their deed from Mattison of the adjacent estate. If, however, the language found in the deed to Cleator should be construed as a reservation instead of an exception, defendant insists that there was created nothing more than a right of way *in gross,* that is, a personal right to Mattison and to him alone, which was not and could not have been assigned or conveyed to his grantees. And further, that if it be held an exception, the title remaining in Mattison, or be held a reservation *in gross* to him, the fee passing to Cleator, Mattison's estate or interests have been determined and terminated by defendant's title acquired under the tax laws.

1. The words "excepting" and "reserving" are used so indiscrim-

inately, and the distinction between them is in some cases so obscure and uncertain, that the courts are frequently called upon to determine what was meant by the parties to written instruments in which one or both of these words appear. An illustration of this is found in *Elliot* v. *Small*, 35 Minn. 396, (29 N. W. Rep. 158,) wherein it was unsuccessfully claimed that the word "reserving," used in reference to a strip of land upon one side of a larger tract described in the deed, meant "excepting," and that the strip was in fact excepted from the grant, the fee remaining in the grantor. Strictly speaking, a reservation is something merely created or reserved out of the thing granted that was not in existence before,—to illustrate, an easement; while an exception is of a part of the thing granted and of something *in esse* at the time. The intent of the parties to the Cleator deed, in which both words were used, must be gathered from an inspection of the entire instrument, having also in mind that a deed is to be construed most strongly against the grantor. In this case we first notice that the fee of a tract 33 by 90 feet is first conveyed, being fully described by metes and bounds, from the rear or inner end of which there is then excepted and reserved the strip, 10 feet wide, for an alley, "a narrow passage or way in a city, as distinct from a public street." This is significant, for the purpose for which the strip was to be devoted, as in the case of *Eliot* v. *Small,. supra*, did not require the exclusion of the fee of the strip from the grant, but an easement only. Had the grantor intended to reserve anything more than a way, his intent should have been manifested in the deed. No exclusion of the fee can be implied. *Carlson* v. *Duluth Short Line Ry. Co.*, 38 Minn. 305.

Whether the thing granted be an easement in land, or the land itself, may depend upon the nature and use of the thing granted. If it be non-continuous, or to be used only occasionally, like a way, a reasonable interpretation of the grant is that only an incorporeal hereditament is created, an easement in the land. *Jamaica Pond Aqueduct Co.* v. *Chandler*, 9 Allen, 159. Whether a right of way is embraced in a deed is always a question of construction of the deed, having reference to its terms and the practical incidents belonging to the grantor of the land at the time of the conveyance. *Hutte-*

*meier* v. *Albro*, 18 N. Y. 48. An exception may be made in the form of a reservation, or a reservation in the form of an exception, and the court will, generally, construe it according to the intention of the parties. It is apparent that the fee to the strip in dispute vested in Cleator and was not retained by Mattison. *Sanborn* v. *City of Minneapolis*, 35 Minn. 314, (29 N. W. Rep. 126;) *Elliot* v. *Small*, *supra; City of Cincinnati* v. *Newell*, 7 Ohio St. 37; *Tuttle* v. *Walker*, 46 Me. 280; *Kuhn* v. *Farnsworth*, 69 Me. 404; *Leavitt* v. *Towle*, 8 N. H. 96.

2. It is competent for one who is the grantor of an estate to create a right of way over it in his own favor, either appurtenant to his other lands, or *in gross*, (that is, strictly personal,) by a reservation thereof inserted in his deed; or it may be done, though in terms it be an exception. Washb. Easements, *21. A way *reserved*, as the word is used in a popular sense, is strictly an easement newly created by way of a grant from the grantee in the deed of the estate, to the grantor. Id. *20; 3 Washb. Real Prop. (5th Ed.) 465. But a grant *in gross* is never presumed when it can fairly be construed as appurtenant to some other estate. Washb. Easements, *29, *161. And, to declare it appurtenant, there must be two distinct tenements, the dominant, to which the right belongs, and the servient, upon which the burden or obligation rests. When there is in the deed of conveyance no declaration of the intention of the parties in regard to the nature of the way, it will be determined by its relation to other estates of the grantor, or its want of such relation. The *terminus ad quem* is of especial significance. *Dennis* v. *Wilson*, 107 Mass. 591, and cases cited. In partition of land, with permission for a way over one tract for the use of the owner of another, the right would be taken and presumed to be appurtenant. *Bowen* v. *Conner*, 6 Cush. 132. It is difficult to see, as was remarked in *Dennis* v. *Wilson*, how a division of the entire tract by a deed of part from a sole owner, with a like provision for a way, can receive any different construction. We also have a practical interpretation of the reservation, by Cleator, the grantee. He immediately built with reference to the alleged alley, abutting his building upon it. For over twelve years thereafter—so long as he owned the premises—he used this strip

in common with those who, for the time being, owned or occupied the inside parcels, for the purpose of an alley solely. His understanding is plain from his actions and is beyond controversy.

And we also have a right to examine the circumstances surrounding the transaction, in order to discover the intent of the parties. It is obvious that when Mattison sold to Cleator he had determined to change the facing of his tract of land from the street on the north to the avenue on the east of it, or he would not have disposed of the entire street front. It is also plain from the narrowness of the lot purchased by Cleator, and other circumstances in the case, that the tract had become, or was about to become, business property, in the rear of which an alley was almost indispensable. The change of front had necessarily cut off the greater part of the tract, should it be used for business purposes, from the public alley on the south. The excepted and reserved strip came to and connected Mattison's estate with the street, and, if appendant, was a most important privilege. And from the fact that two days thereafter Mattison sold and conveyed all that remained of his original holding, we may safely infer that he contemplated a sale of the balance when he executed the deed in dispute. If this be a fair and permissible inference, it would seem to follow almost conclusively that it was not Mattison's intention to retain, by reservation or exception, so valueless a privilege as a right *in gross* to this *cul de sac* would have been—a right of way personal solely, not to be exercised in connection with other lands, and which was non-assignable. It is impossible to see what interest Mattison would have had in reserving a way over Cleator's lot, unless made appurtenant to the balance of his tract. He had no present use for it, as the premises were not then and never had been occupied by him. But the importance of the way as appurtenant and appendant to the estate which remained, to enhance the value because greatly beneficial, needs no demonstration. The exception and reservation in the conveyance to Cleator was designed to and did create and constitute an affirmative easement to the tract of land on which it terminated, which ran with the land and passed to Mattison's vendees. *Kent* v. *Waite*, 10 Pick. 138; *Dennis* v. *Wilson, supra; Peck* v. *Conway*, 119 Mass. 546; *Winthrop* v. *Fairbanks*, 41 Me. 307;

*Clark* v. *Martin,* 49 Pa. St. 289; *Phœnix Ins. Co.* v. *Continental Ins. Co.,* 87 N. Y. 400; *Kuecken* v. *Voltz,* 110 Ill. 264.

3. In addition to other defences, the appellant alleged in his answer that under and by virtue of certain proceedings to enforce the collection of taxes against the premises owned by him, viz., the tract 33 by 90 feet, for the years 1882 and 1883, and sales therein, he had acquired two separate and distinct tax titles to the same, and had thereby become the owner in fee of said premises, free and clear of all incumbrances, liens, and easements. To this part of the answer a general demurrer was interposed and sustained, the defendant appealing. This appeal was pending here when the case was tried in the district court upon the facts remaining in issue by the pleadings, and has been argued and submitted with that from an order refusing a new trial.

The demurrer was properly sustained. Under the tax laws the owner of real property is permitted to purchase the same at a tax sale, and may afterward rely upon his tax title or his antecedent title, or both, except as against a right, title, interest, lien or incumbrance which he is legally or equitably bound to protect as against taxes and tax sales. Gen. St. 1878, *c.* 11, § 87; *Branham* v. *Bezanson,* 33 Minn. 49, (21 N. W. Rep. 861.)

The appellant contends that if an easement appurtenant existed in his land, the plaintiffs should have protected their interests by a payment of the taxes against the alley-way. Exactly how this could have been done is not suggested. The easement is an incorporeal hereditament and not taxable. The strip used for alley purposes seems to have been assessed with the balance of the tract described in appellant's deed and to which he held the fee, and properly so, for there was but one parcel or lot of land. It may be stated as a general proposition, thoroughly established by the authorities, that whenever a party holds such a relation to the land or its owner, whether by express contract or implication of the law arising on such relation, that it is his duty to pay the taxes, he cannot allow the land to be sold for the taxes, become the purchaser, and thus build up a title on his own neglect of duty. Show the existence of the duty, and the disqualification is made out in every instance. Cooley, Tax'n, 345;

Desty, Tax'n, 927; Burroughs, Tax'n, 352, and the many cases cited in each of these text-books in which the doctrine has been applied. An application of the rule, in this state, may be found in *Wilson* v. *Proctor,* 28 Minn. 13, (8 N. W. Rep. 830;) in *Allison* v. *Armstrong,* 28 Minn. 276, (9 N. W. Rep. 806;) and in *Smalley* v. *Isaacson,* 40 Minn. 450, (42 N. W. Rep. 352.)

The legal relation existing between the owners of the two estates, the dominant and the servient, arising out of the easement, made it defendant's duty to pay these taxes. His purchases therefore were but a payment, and inured to respondents' benefit.

Both orders affirmed.