RICHFIELD OIL CORPORATION *v.* CHESAPEAKE
AND CURTIS BAY RAILROAD. COMPANY ET AL.

[No. 38, April Term, 1941.]

*Decided June 10th, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, and FORSYTHE, JJ.

*J. Cookman Boyd, Jr.,* with whom were *Felix C. Lourie* and *Boyd & Boyd* on the brief, for the appellant.

*Eugene S. Williams* and *William R. Semans,* for the appellees.

COLLINS, J., delivered the opinion of the Court.

On October 6th, 1939, the Richfield Oil Corporation of New York, a body corporate, appellant, acquired by deed from Joseph P. Connor, Special Master, certain real estate located on Curtis Bay in Baltimore City, Maryland. Through this property the appellee, the Chesapeake & Curtis Bay Railroad Company, a body corporate, formerly operated a railroad over property in which it acquired an interest from the United States Asphalt Refining Company by deed dated September 11th, 1925. The appellant owns land on both sides of the railroad property. In November, 1926, the stock of the appellee, the Chesapeake & Curtis Bay Railroad Company, was acquired by the Western Maryland Railway Company, which operates the railroad formerly operated by the Chesapeake & Curtis Bay Railroad Company. On November 2nd, 1940, the appellant placed certain sleeves and pipes, from one part of its property to another, necessary for the transportation of petroleum products under the railroad tracks of the appellees, late at night, which appellees claim was done in a clandestine manner but which appellant claims was done at that late hour for the purpose of not interfering with the operation of appellees' railroad. Before the installation of these pipes was completed, the appellees removed one of them. On November 29th, 1940, the appellant filed a bill of complaint against appellees reciting among other things the aforesaid facts, and alleging ownership of the fee under said right-of-way in the appellant and that the appellees' interest in said property is a certain easement of "the right of way for railroad purposes." The bill asked among other things: "That the defendants,

they and each of them, their agents and servants, may be permanently enjoined and strictly prohibited from interfering, obstructing or molesting the complainant, its agents and servants, in crossing or recrossing over, or in placing its pipe lines, connections, or other equipment necessary and proper to the operation and enjoyment of complainant's property hereinabove described, across and under right of way of defendants located on the complainant's said property; provided, however, that the same be performed by the complainant in such manner as not to interfere with or interrupt the reasonable and proper use by the defendants of said right of way for railroad purposes." The bill also asked for other and further relief. After an answer was filed by the defendants, testimony was taken in open court before the chancellor and on February 4th, 1941, a decree was filed by the chancellor declaring the Chesapeake & Curtis Bay Railroad Company to be the owner in fee simple of the property in question and dismissing the bill of complaint. The appeal is taken from that decree.

All parties to this proceeding admit that the equity court has jurisdiction in this case in view of the findings of the chancellor. Equity, however, cannot obtain jurisdiction merely by the consent of the parties to the cause, nor has equity jurisdiction to determine a matter involving a real disputed title to real estate. *Greenbaum v. Harrison,* 132 Md. 34, 103 A. 84; *Clayton v. Shoemaker,* 67 Md. 216, 9 A. 635; *Gulick v. Fisher,* 92 Md. 353, 364, 48 A. 375; *Whalen v. Dalashmutt,* 59 Md. 250; *Bernei v. Sappington,* 102 Md. 185, 190, 62 A. 365; *Arey v. Baer,* 112 Md. 541, 542, 76 A. 843. "The law is well settled that an injunction will not issue to restrain a trespass, simply as such, but it will be granted where the injury alleged is irreparable, or where full and adequate relief cannot be had at law, or where the trespass is of a character to work destruction of the property as it had been held and enjoyed, or where it is necessary to prevent a multiplicity of litigation." *Long v. Ragan,* 94

Md. 462 at page 464, 51 A. 181, 182; *White v. Flannigain,* 1 Md. 525, 54 Am. Dec. 668; *Shipley v. Ritter,* 7 Md. 408, 61 Am. Dec. 371; *Clayton v. Shoemaker, supra; Baltimore Belt R. R. Co. v. Lee,* 75 Md. 596, 23 A. 901. At the time the bill of complaint was filed there had been breaches of the peace, and the parties having agreed to commit no further acts while this present case was pending, in order to avoid a multiplicity of litigation, the chancellor was correct in holding that jurisdiction in the present case is in equity.

The primary question to be decided by us is whether the appellees, the Chesapeake & Curtis Bay Railroad Company and the Western Maryland Railway Company, own the fee of the land in question, underlying its railroad tracks. The chancellor below held that the fee of the land under the right of way was in the appellees. The United States Asphalt Refining Company by a series of deeds prior to March, 1916, acquired the land now occupied by both the appellant and the appellees, a ground rent being reserved unto the Curtis Bay Company. On October 5th, 1925, the Curtis Bay Company conveyed to the United States Asphalt Refining Company the reversion in all the lands heretofore conveyed by it, thereby extinguishing the ground rent and converting the leasehold into fee simple property. At the time all this tract was owned by the United States Asphalt Refining Company, it erected on the property at various locations tanks, stills, buildings and other structures of various kinds, and pipe lines were placed under the ground at different locations to carry oil from one part of the property to the other. In order to further develop this property, the United States Asphalt Refining Company built and laid out railroad tracks for the purpose of transporting its products and some of its pipe lines passed under the tracks at various points. In 1916, the Chesapeake & Curtis Bay Railroad Company was incorporated by the same interest which controlled the United States Asphalt Refining Company and by a series of deeds made con-

veyance of the tracks and the property covered by the tracks to the new corporation. The first of these deeds was executed on March 16th, 1916, and the granting clause in this deed was: "doth grant unto the said Chesapeake & Curtis Bay Railroad Company, its successors and assigns, the rights of way for railroad purposes in and to that part of the lands of the United States Asphalt Refining Company at Wagner's Point," and the description followed. This deed contained the following saving clause: "Saving and reserving however to the said the United States Asphalt Refining Company a joint use in said right of way and the tracks thereon for the necessary switching and other uses and purposes for itself and its allied industries now or which may hereafter be located along said right of way." It also contained the following clause: "To Have and To Hold the said described rights of way. and the railroad tracks thereupon unto and to the use of the said Chesapeake and Curtis Bay Railroad Company, its successors and assigns; subject however to the reserve joint use aforementioned." Included in this deed was certain land which had previously been conveyed to the Texas Company and in which the United States Asphalt Refining Company had certain rights, and in the case of *Texas Company v. United States Asphalt Refining Company*, 140 Md. 350 at pages 357 and 358, 117 A. 879, 882, this court said that "The Chesapeake & Curtis Bay Railroad Company was made a defendant in the case, because the Asphalt Company executed a deed to it on March 16th, 1916, attempting to convey certain rights of way for railroad purposes over part of the land appropriated to the use in common of the plaintiff and the Asphalt Company, and in which the plaintiff owned the fee, and it was alleged that the Railroad Company was making use of the easement in violation of the plaintiff's rights. * * * The easement which the Asphalt Company's deed purported to convey to the Railroad Company was not appurtenant to the land for the benefit of which the right

of way under the plaintiff's deed had been created. The deed to the Railroad Company did not convey to it the fee in any part of the land in connection with which the pre-existing easement had been used." The second deed to the Chesapeake & Curtis Bay Railroad Company was dated January 2nd, 1924, and the granting clause, the reservation clause, and the To Have and To Hold clause were the same as in the deed of March 16th, 1916. Prior to September 11th, 1925, the railroad tracks had been spread over parts of the property of the United States Asphalt Refining Company and certain parts of the tracks formerly used by the Chesapeake & Curtis Bay Railroad Company had been abandoned by it. Therefore, on September 11th, 1925, an exchange deed was executed whereby the Chesapeake & Curtis Bay Railroad Company conveyed back to the United States Asphalt Refining Company the properties conveyed by the latter to the former in the deeds of. March 16th, 1916, and January 2nd, 1940, and the granting clause in that deed reads in part as follows: "The said The Chesapeake and Curtis Bay Railroad Company doth grant, assign and reconvey unto the said The United States Asphalt Refining Company, its successors and assigns, its right, title and interest in and to all that portion of land heretofore conveyed by the said The United States Asphalt Refining Company to the said The Chesapeake and Curtis Bay Railroad Company. * * *" This deed also contained the following clause: "To Have and To Hold the same unto and to the use of the said The United States Asphalt Refining Company, its successors and assigns, in the same manner as if the same had not heretofore been conveyed. * * *" In the same deed of September 11th, 1925, "the said The United States Asphalt Refining Company doth grant, convey and assign unto the said The Chesapeake and Curtis Bay Railroad Company, its successors and assigns, the rights of way for railroad purposes in and to the following lots or tracts of ground * * *," a description of which followed. The deed also contained the following clauses:

"Being all that portion of the lots of ground heretofore conveyed by the said The United States Asphalt Refining Company to the said The Chesapeake and Curtis Bay Railroad Company by the Deeds hereinbefore recited, and the right of way for railroad purposes in such other land of the said The United States Asphalt Refining Company, not heretofore conveyed to the said The Chesapeake and Curtis Bay Railroad Company, as is now used by the said The Chesapeake and Curtis Bay Railroad Company in the operation of its railroad as aforesaid."

"Together with all and every, the rights, alleys, ways, waters, privileges, appurtenances and advantages, to the same belonging, or anywise appertaining."

"To Have and To Hold the said described right of way and the railroad tracks thereon unto and to the use of the said The Chesapeake and Curtis Bay Railroad Company, its successors and assigns, saving and reserving, however, to the said The United States Asphalt Refining Company, its successors and assigns, and to The Interocean Oil Company, a corporation duly incorporated, its successors and assigns, a joint use in such parts of said right of way as may now be occupied by any tanks, stills, or buildings of the said The United States Asphalt Refining Company and the said The Interocean Oil Company, now erected thereupon, and for such time as the same may remain thereupon."

We must note the difference between the granting clause to the United States Asphalt Refining Company and that to the Chesapeake & Curtis Bay Railroad Company in this deed of September 11th, 1925, one conveying "its right, title and interest," the other conveying "the rights of way for railroad purposes." Whatever title is held by the Chesapeake & Curtis Bay Railroad Company is held under this deed. Subsequently, on October 5th, 1925, the United States Asphalt Refining Company conveyed all of its property to

the Interocean Oil Company, a body corporate, which deed contained the following saving and excepting clause: "Saving and excepting however from the above described land such portions as is described and conveyed to the Chesapeake and Curtis Bay Railroad Company by and in a deed of exchange and in the annexed hereto made between the said United States Asphalt Refining Company and the Chesapeake and Curtis Bay Railroad Company dated September 11th, 1925, recorded or intended to be recorded among the Land Records of Baltimore City prior hereto, with the benefit however to the said party of the second part, its successors or assigns, of the reservations mentioned in said deed of exchange relating to the joint use of such parts of the right of way of said railroad as may now be occupied by any tanks, stills or buildings therein as recited in said deed." On the same day the Interocean Oil Company executed an indenture of trust on its aforesaid property to the Century Trust Company of Baltimore which contained the following saving and excepting clause: "Saving and excepting, however, from the above described land such portions as are described in a deed of exchange and in the plat thereto attached between the United States Asphalt Refining Company and the Chesapeake and Curtis Bay Railroad Company dated September 11th, 1925, recorded or intended to be recorded among the Land Records of Baltimore City prior hereto." Later the Interocean Oil Company went into receivership and Joseph P. Connor, appointed receiver by the United States District Court for the District of Maryland, as Special Master, granted and conveyed to the appellant on October 6th, 1939, the property now held by it by metes, bounds, courses and distances subject to the following clause: "Subject also to the grant of various railroad rights of way by deed between United States Asphalt Refining Company and The Chesapeake and Curtis Bay Railroad Company, dated September 11th, 1925, and recorded

among the Land Records of Baltimore City in Liber S. C. L. No. 4465, folio 321, said railroad rights of way having an area of approximately Thirteen (13) acres of land, more or less." Whatever title is held by the appellant, Richfield Oil Corporation of New York, was acquired by this deed of October 6th, 1939.

We must determine whether the conveyance of September 11th, 1925, above referred to, from the United States Asphalt Refining Company to the Chesapeake & Curtis Bay Railroad Company, whereby it made a grant of "the rights of way for railroad purposes," was a grant of the fee or whether it was an easement. This court said through Judge Sloan in the case of *Hodges, Trustee v. Owings,* 178 Md. 300 at page 304, 13 A. 2nd, 338, 340: "Both parties agree that if the language of a deed be doubtful, it shall be most strongly construed against the grantor, but, as said in *Zittle v. Weller,* 63 Md. 190, 196, 'this rule is to be resorted to, and relied on, only where all other rules of exposition fail to reach, with reasonable certainty, the intention of the parties.' 'And,' as said in *Maryland State Fair v. Schmidt,* 147 Md. 613, 621, 128 A. 365, 368, "to ascertain its true meaning the situation of the parties and the circumstances attending the execution of the deed may be considered.' *Brown v. Reeder,* 108 Md. 653, 657, 71 A. 417; *Logsdon v. Brailer Mining Co.,* 143 Md. 463, 474, 123 A. 113; *Weinbeck v. Dahms,* 134 Md. 464, 107 A. 12." The chancellor admitted extrinsic evidence, over exception, as to the intention of the parties at the time this deed of September 11th, 1925, was executed and we believe it was rightly admitted. From the testimony in the record, it appears that Mr. J. Cookman Boyd, Sr., was general counsel of both the United States Asphalt Refining Company and the Chesapeake & Curtis Bay Railroad Company and remained in this position until the dissolution of the United States Asphalt Refining Company and the sale of the stock by the Chesapeake & Curtis Bay Railroad Company to the appellee, Western Maryland Railway Company. Mr. Boyd carried on negotiations for the sale of the stock of the Western

Maryland Railway Company and at that time he was president of the Chesapeake & Curtis Bay Railroad Company. Various letters, agreements and much testimony was produced in an effort to show the intention of the parties at the time this deed of September 11th, 1925 was executed. Mr. H. R. Pratt, chief engineer of the Western Maryland Railway Company, testified that he and Mr. George Bagby, president of the Western Maryland Railway Company, met with Mr. J. Cookman Boyd, Sr., in October, 1926, and that Mr. Boyd stated that the Chesapeake & Curtis Bay Railroad Company has a deed in fee simple to its right of way. Mr. Boyd denied that he ever made a statement about the Chesapeake & Curtis Bay Railroad Company owning in fee the land over which its tracks were placed and further stated that no fee was ever granted nor was there ever any intention of granting such a fee. There was also offered in evidence testimony taken before the Interstate Commerce Commission at the time of the sale of the stock of the Chesapeake & Curtis Bay Railroad Company to the Western Maryland Railway Company and testimony taken in the Federal Court on July 6th, 1939, at the time of the sale to the appellant by Joseph P. Connor, receiver, of the property now held by it. Mr. Joseph P. Connor, who was an employee of the United States Asphalt Refining Company, testified at that time that "the trackage belongs to the Western Maryland Railway Company in fee," that it is taken out of the bid and is not included in the property to be sold. In testifying in the instant case, Mr. Connor called attention to the fact that this statement made in the federal court was as to "trackage." Without commenting on all of this voluminous testimony and evidence, we must conclude that it does not show that there was an intention by the United States Asphalt Refining Company to convey a fee simple title to the Chesapeake & Curtis Bay Railroad Company by its deed of September 11th, 1925. We further find that, at the time of the purchase of this stock, the Western Maryland Railway Company had the title to the property of the Chesapeake

& Curtis Bay Railroad Company examined by the Title Guarantee and Trust Company of Baltimore and a report by letter was given by the said title company on April 11th, 1927, which report included the following: "In this deed you will note also that the subject matter of the grant is a right of way, and in the *habendum* clause of the deed there is reserved to the United States Asphalt Refining Company, its successors and assigns, and to the Inter-Ocean Oil Company, its successors and assigns, a joint use in such parts of said right of way as may now be occupied by any tanks, stills or buildings of the United States Asphalt Refining Company and the Inter-Ocean Oil Company for such time as the same may remain upon said right of way. Subject to the above, we find the title of the Chesapeake and Curtis Bay Railroad Company to the rights of way as defined and described in the said deed of September 11th, 1925, to be good and marketable, and free of encumbrances, except the qualifications or reservations, as heretofore mentioned. And except also as to the possible reverter in the United States Asphalt Refining Company, in the event of the non use of the said rights of way for railroad purposes." The appellees objected to the admissibility of this letter, but it was admitted by the chancellor, and we believe rightly so, not as evidence to the title which was held by the Chesapeake & Curtis Bay Railroad Company, but as to the understanding which the Western Maryland Railway Company had as to this title at the time of the purchase of the stock. The court was correct in not admitting in evidence a confirmatory deed to appellant executed after the present action had been started. Without commenting further on this evidence, we do not believe that it is sufficient to change the public record of the deed. Our interpretation must be placed on the deed to the Chesapeake & Curtis Bay Railroad Company of September 11th, 1925 as recorded. The rights of the parties are determined and measured by the terms of the deed, particularly as the appellant is a stranger to this deed and purchased the property upon

the faith of the public record. *Kensington Railway Company v. Moore,* 115 Md. 36, 80 A. 614. The granting clause in this deed of September 11th, 1925, granted, conveyed and assigned, "the rights of way for railroad purposes." Sections 11 and 12 of article 21 of the Code provide as follows: "11. No words of inheritance shall be necessary to create an estate in fee simple, but every conveyance of real estate shall be construd to pass a fee simple estate, unless a contrary intention shall appear by express terms or be necessarily implied therein. 12. The word 'grant,' the phrase 'bargain and sell,' in a deed, or any other words purporting to transfer the whole estate of the grantor shall be construed to pass to the grantee the whole interest and estate of the grantor in the lands therein mentioned, unless there be limitations or reservations showing, by implication or otherwise, a different intent."

The railroad tracks had been laid by the United States Asphalt Refining Company for its own use in transportation of its products. At the time of the incorporation of the Chesapeake & Curtis Bay Railroad Company, both companies were owned by the same interests. It is hardly conceivable that the interests which controlled the parent corporation would create and cause to be conveyed to another corporation a strip of land in fee running through its property, for by so doing the control and ownership of the newly created corporation might pass to entirely different interests, whereby the parent company might be cut of and not allowed to cross from one part of its property to another, and particularly with tanks and stills on all parts of its property such crossings were necessary for the proper operation if its business. Quoting *Elliott on "Railroads,"* (3rd Ed.), sec. 1158, pages 627 and 628: "Where the intention to convey a fee does not appear, as in the conveyance of a 'right of way' for the railroad through certain lands, the company takes an easement only." Quoting *Lewis on "Eminent Domain,"* (3rd Ed.), sec. 468; "The conveyance of a right of way or for specified uses, conveys an easement

only." Quoting *Jones on "Easements,"* (1898 Ed.), sec. 212: "Where the granting clause of a deed declared the purpose of the grant to be the right of way for a railroad, the deed passes an easement only, etc." *Public Serv. Comm. v. Gas, etc., Corp.*, 162 Md. 298, 312, 316, 159 A. 758; *Hodges v. Owings*, 178 Md. 300, 13 A. 2nd 338; *Blakely v. Chicago, K. & N. R. Co.*, 46 Neb. 272, 64 N. W. 972; *Jones v. Van Bochove*, 103 Mich. 98, 61 N. W. 342; *Alabama Gt. So. R. Co. v. McWhorter*, 202 Ala. 455, 80 So. 839; *Seaboard Air Line Ry. v. Banks*, 207 Ala. 194, 92 So. 117; *Leader Realty Co. v. Taylor*, 147 La. 256, 84 So. 648; *Miller v. Chesapeake & Ohio Ry. Co.*, 93 W. Va. 257, 116 S. E. 521; *Branch v. Central Trust Company*, 320 Ill. 432, 151 N. E. 284; *Joseph v. Evans*, 338 Ill. 11, 170 N. E. 10. 1 *Thompson on Real Property*, page 533, sec. 420, defines "a grant of a right of way to a railroad company to be the grant of an easement merely, and the fee remains in the grantor." *Jones on Easements, supra*, sec. 211; 33 *CYC "Railroads,"* page 169; *Smith v. Holloway*, 124 Ind. 329, 24 N. E. 886. It, therefore, must be concluded that this grant from United States Asphalt Refining Company to the Chesapeake & Curtis Bay Railroad Company of September 11th, 1925, was the grant of an easement for railroad purposes and not a grant of the fee. The appellees rely greatly on the case of *New Mexico v. United States Trust Co.*, 172 U. S. 171, 19 S. Ct. 128, 43 L. Ed. 407. The question in that case to be decided was a question of taxation and the court said, in construing the statute at page 181 of 172 U. S., at page 132 of 19 S. Ct.: "To support its contention, appellant urges the technical meaning of the phrase 'right of way,' and claims that the primary presumption is that it was used in its technical sense. Undoubtedly that is the presumption, but such presumption must yield to an opposing context and the intention of the legislature otherwise indicated." The opinion in that case also states that "our decision * * * rests on the terms of the statute." The appellees also rely on the case of *Arkansas Improvement Company v. Kansas City Southern Ry. Co.*, 189 La. 921,

181, So. 445. It is said in that case at page 447 of 181 So.: "A right of way may consist either of the fee, or merely of a right of passage and use, or servitude. Whether the one or the other is meant in any particular instrument must be gathered from the instrument as a whole. As a general rule, only a servitude is meant."

The appellees further contend that the reservations in the deed of October 5th, 1925, from the United States Asphalt Refining Company to Interocean Oil Company and in the indenture of trust of October 5th, 1925, from Interocean Oil Company to Century Trust Company reserving such portions as are described in the deed of September 11th, 1925, from United States Asphalt Refining Company to the Chesapeake & Curtis Bay Railroad Company, and the provision in the deed from Joseph P. Connor, Special Master, to Richfield Oil Corporation, appellant, that the conveyance was subject to the grant of various railroad rights of way by the same deed from United States Asphalt Refining Company to the Chesapeake & Curtis Bay Railroad Company, prevent the fee of the land in dispute vesting in appellant. Having previously decided in this case that the grant to the Chesapeake & Curtis Bay Railroad Company was an easement for railroad purposes and these exceptions extending to the *portions* conveyed, and those *portions* being an easement for railroad purposes, we find that the fee is therefore in appellant subject to the easement of rights of way for railroad purposes in appellees. *Derby v. Hall*, 2 Gray (Mass.) 236; *Shell Petroleum Corp. v. Ward*, 100 Fed. 2nd; *Paine v. Consumers' Forwarding & Storage Co.*, 71 Fed. 626; *Elliot v. Small*, 35 Minn. 396, 29 N. W. 158; *Moakley v. Blog*, 90 Cal. App. 96, 265 P. 548; *Kansas City Southern Ry. Co. v. Marietta Oil Corp.*, 102 Fed. 2nd 603; *Barker v. Lashbrook*, 128 Kan. 595, 279 P. 12.

It having been decided that the fee is in appellant and an easement of rights of way for railroad purposes is in the appellees, should the injunction prayed for be granted? Although the appellant owns the

land on both sides of the right of way where it proposes to install the new pipe line which is the subject of this controversy, it is more or less admitted that the purpose of the pipe line in question is to carry oil for shipment to the Baltimore & Ohio Railroad, which is a competitor of appellees. Appellant contends that it is essential from its point of view to have service on the Baltimore & Ohio Railroad. With this statement, we do not believe it necessary to consider further the allegation of irreparable damage, the appellant being the owner of the fee and the other facts in this case as hereinbefore presented being considered. *Chesapeake Co. v. Mt. Vernon Co.*, 107 Md. 528, at page 532, 68 A. 1046. It is further contended that the installation of the particular pipe line in question would be a possible source of danger to appellees. It was admitted, however, by Mr. George R. Haworth, general superintendent of the Western Maryland Railway Company, that there are other pipe lines under the tracks and other terminals of the Western Maryland Railway Company at other places and that these pipes are placed three feet below the sub-ballast section and about five feet below the top of the rail and that is the general way these pipe lines are installed at locations similar to the place where the appellant proposes to install the new pipe line. It, therefore, appears that the installation of the proposed pipe line three feet below the sub-ballast section and five feet below the top of the rail would not interfere with the easement for railroad purposes provided it is placed at such a time as not to interrupt the reasonable and proper use by the appellees of said rights of way for railroad purposes. There is testimony in this case that the pipe line which was removed had been laid about three and one-half to four feet under the track. A stipulation was made by appellees as follows: "That the plaintiff has the right of ingress and egress over the surface of the railroad to and from parcels of plaintiff's land which are

completely enclosed by tracks. That in so far as the intraplant operation of plaintiff are concerned defendant has no objection to the laying of pipes below the surface of the tracks to and from its land which is completely encircled by tracks, subject to the defendant's approval of the manner of laying the pipes."

We find that the appellant, its agents and servants, have the right of crossing or recrossing over, or in placing its pipe lines, connections or other equipment necessary and proper to the operation and enjoyment of appellant's property across and under the right of way of appellees located on the property owned by the appellant in fee; provided, however, that this be performed by the appellant in such manner and at such times as not to interfere with or interrupt the reasonable and proper use by the appellees of said rights of way for railroad purposes. *Public Serv. Comm. v. Gas, etc., Corp. supra;* 17 *American Jurisprudence, Easements,* sec. 117; *Cincinnati, etc., R. R. Co. v. Wachter,* 70 Ohio St. 113, 70 N. E. 974; *Smith Canal & Ditch Co. v. Colorado Ice & Storage Co.,* 34 Col. 485, 82 P. 940; *Perley v. Cambridge,* 220 Mass. 507, 108 N. E. 494; 3 *British Ruling Cases,* page 536, citing *Rivera v. Finn,* 50 Hun 176, 3 N. Y. Supp. 22; *Kendall v. Hardy,* 208 Mass. 20, 94 N. E. 254; *Miller v. Seaboard Air Line Ry.,* 94 S. C. 105, 77 S. E. 748. For the reasons herein given we find that the injunction should have been granted as prayed.

At the time the hearing was concluded, the chancellor verbally indicated his intention to dismiss the bill of complaint, and after this time and before the written opinion and order was filed, the appellant filed a petition to amend the bill of complaint and the chancellor refused to allow this amendment. A very wide discretion is given the court in allowing or refusing amendments at any time prior to a final decree in the case, and in the absence of abuse, ordinarily that discretion will not be reviewed. *Miller's Equity Procedure,* sec. 182; *Buckner v. Jones,* 157 Md. 239, 145 S. E. 550; *Snook v. Munday,*

96 Md. 514, 515, 54 A. 77; *Calvert v. Carter*, 18 Md. 73, 107; *Warren v. Twilley*, 10 Md. 39, 46. As this petition to amend was filed after the chancellor had verbally announced his decision in the case, we do not find that the discretion of the chancellor in refusing the amendment was abused.

> *Decree reversed, with costs, and case remanded for the passage of a decree in accordance with the views herein expressed.*